UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**KIMBERLY A. CONANT,**                        Chapter 7
    Debtor                  Case No. 10-21337-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~

**FIA CARD SERVICES, N.A.,**
    Plaintiff
v.                                              Adv. P. No. 11-1018
**KIMBERLY A. CONANT,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

**I. INTRODUCTION**

    The matters before the Court are 1) the Application for Attorney Compensation filed by the Law Firm of Grantham Cencarik, P.C. ("GC"), counsel to the Defendant Kimberly A. Conant (the "Defendant" or the "Debtor"), through which the firm requests compensation for services in the sum of $10,683.75 and reimbursement of expenses in the sum of $45.98 pursuant to 11 U.S.C. § 523(d); 2) the Objection to the Application filed by FIA Card Services, N.A. (the "Plaintiff") on grounds that the fees requested are unreasonable, that the Defendant failed to mitigate her litigation expenses and that the application includes "block entries," without specific detail as to the services performed; 3) the Motion to Strike the Objection on grounds that it was not timely filed; and 4) the

1

Plaintiff's Response to the Motion to Strike.

The material facts necessary to resolve the matters are not in dispute. A hearing is unnecessary to resolve the issue of the reasonableness of GC's fees. Accordingly, the Court makes the following findings of fact and conclusions of law.[1]

## II. BACKGROUND

The Debtor filed a voluntary Chapter 7 petition on October 18, 2010. The Plaintiff timely filed the above-captioned adversary proceeding on January 14, 2011, seeking a determination that an alleged debt in the amount of $ 8,900.00 was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). On February 17, 2011, the Debtor moved to dismiss the Complaint on grounds that it failed to state a cause of action and was intended to intimidate the Debtor into a "quick settlement." The Plaintiff responded to the Motion to Dismiss, stating "[t]he Complaint has a strong factual basis which establishes a compelling cause of action for credit card fraud under 11 U.S.C. § 523(a)(2)(A) which must be determined on its merits, not on a preliminary motion." The Plaintiff added: "the strength of the facts and circumstances on which the claim is based shows that this is not a frivolous suit." One day later, on April 1, 2011, the Plaintiff filed a Request for Leave to Amend its Complaint. Prior to the hearing on her Motion to Dismiss, the Debtor filed an Opposition to the Request for Leave to Amend, in which she referenced Fed. R. Civ. P. 9(b), and noted

---

[1] The Court notes that the Plaintiff has filed a Notice of Appeal from its order of November 22, 2011. Because the Court expressly directed the Debtor to file a fee application pursuant to 11 U.S.C. § 532(d), the Court concludes it is not deprived of jurisdiction to determine the amount of fees to which Debtor is entitled.

2

that the Plaintiff offered nothing but inferences to support of its claim under 11 U.S.C. § 523(a)(2)(A).

The Court heard the Request for Leave to Amend at the same time as the Debtor's Motion to Dismiss on April 11, 2011.  The Court afforded the Plaintiff an opportunity to amend its Complaint; denied the Debtor's Motion to Dismiss; and directed the Plaintiff to file an Amended Complaint.  On April 29, 2011, the Plaintiff filed its Amended Complaint.  The Debtor answered the Amended Complaint three days later, and the Court issued a Pretrial Order on May 13, 2011, establishing August 11, 2011 as the deadline for completion of discovery and September 9, 2011 as the deadline for filing the Joint Pretrial Memorandum.

Following the expiration of the discovery deadline, the Defendant, on September 9, 2011, filed her Motion for Summary Judgment pursuant to Fed. R. Bankr. P. 7056 and [for] Fees and Costs pursuant to 11 U.S.C. § 523(d), in which she asserted, and this Court later found on November 22, 2011, that the Plaintiff did not establish the elements of its claim under § 523(a)(2)(a) and that it was not substantially justified in filing the adversary proceeding because it failed to conduct any discovery or any reasonable inquiry or diligence before doing so.  In short, the Debtor established that the Amended Complaint did not substantially comply with Fed. R. Civ. P. 9(b),[2] made applicable to this proceeding

---

[2] According to the court in Sculler v. Rosen (In re Rosen), 151 B.R. 648, 655 (Bankr. E.D.N.Y. 1993), "There are three goals satisfied by Fed.R.Civ.P. 9(b): '(1) providing a defendant fair notice of plaintiff's claim, to enable preparation of a defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits.'" (citation omitted).

by Fed. R. Bankr. P. 7009, and had the hallmarks of a "strike suit" intended to coerce a settlement.[3] *See* Honey Dew Assocs., Inc. v. Monaco (In re Monaco), 347 B.R. 454, 458, fn. 3 (Bankr. D. Mass. 2006) (citing Natasha, Inc. v. Evita Marine Charters, Inc., 762 F.2d 468, 471 (1st Cir. 1985)).

Although the Plaintiff moved for an extension of time within which to file its own motion for summary judgment, it did not file any dispositive motions. It did, however, respond to the Debtor's Statement of Undisputed Material Facts in which it stated, *inter alia,*:

> On May 23, 2011, Plaintiff's attorney sent via e-mail a draft Joint Rule 26(f) statement to Defendant's counsel, and, as indicated in the e-mailed response to Defendant's counsel the two attorneys discussed the proceeding by phone and finally copies of the checks by which the overdraft Charges were incurred to the Account and signature samples for the Defendant and James F. Bradley were sent to Plaintiff's counsel.
>
> On July 12, 2011, Plaintiff's counsel sent an e-mail to Defendant's counsel offering to dismiss the proceeding for return of the $250 filing fee.

---

[3] In her Motion for Summary Judgment, the Debtor stated:

The Plaintiff failed to conduct a 2004 examination prior to the commencement of litigation, and declined to serve any discovery on Ms. Conant after the filing of the first Complaint up until the filing date [of] this motion. The discovery deadline expired on August 11, 2011. Since fraud claims involve the Defendant's state of mind, the Plaintiff should have conducted a minimal amount of discovery so that it may support its allegations of fraudulent intent or representations. This inaction by the Plaintiff is further evidence that this litigation is nothing other than a strike suit.

The Debtor also stated that the Plaintiff did not attend the section 341 meeting of creditors.

4

The Joint Rule 26(f) statement was filed on July 19, 2010 [sic] but it did not include the defense now asserted.

Receipt of the attachments to the e-mail response sent by Defendant's counsel to the Plaintiff's counsel on May 23, 2011 was the first time Plaintiff had copies of the checks and signature samples which resulted in the questionable account charges.

On May 24, 2010 [sic] Plaintiff's counsel sent an e-mail to Defendant's counsel indicating that the check signatures looked like the Defendant's husband's signature and requested information concerning the Defendant's marital status, the use of the funds for which the charges were incurred, and information concerning "Mr. Conant's Chapter 13".[4]

Defendant's counsel did not respond to the request for information in Plaintiff's May 24, 2010 [sic] e-mail.

On July 17, 2011, by e-mail, Plaintiff's counsel stated Plaintiff's willingness to dismiss the proceeding outright with both parties to bear their own fees and costs to which Defendant's counsel responded that he would convey the offer to his client.

The Plaintiff attached to its Statement a letter dated February 17, 2011 from Debtor's counsel, advising the Plaintiff that "[t]his letter constitutes a demand pursuant to Fed. R. Civ. P. 11 to withdraw the adversary complaint against Ms. Conant for the reasons stated in the attached motion to dismiss" and adding "[i]f your client fails to avail itself to the safe harbor provided by Fed. R. Civ. P. 11, please note that we will seek sanctions and legal expenses after the case is dismissed." Accordingly, the Plaintiff was forewarned that the Defendant considered its Complaint baseless and at least inferentially that discovery was

---

[4] Notably, the Plaintiff did not seek discovery in accordance with the Federal Rules of Bankruptcy Procedure. Had it done so, it would have discovered that the Debtor's former husband is James Bradley.

5

advisable.[5]

In its Objection to the Motion for Summary Judgment, the Plaintiff did not challenge the Defendant's assertions that it did not conduct any discovery before filing its Complaint or Amended Complaint, relying instead only on inferences from its internal records and the Debtor's bankruptcy schedules.

On November 22, 2011, this Court granted the Debtor's Motion for Summary Judgment and ordered her counsel to file a fee application in accordance with Fed. R. Bankr. P. 2016 and MLBR 2016-1 by December 22, 2011. It authorized the Plaintiff to file an objection to the Application by January 5, 2012.

### III. THE APPLICATION AND OBJECTION

GC seeks total compensation of $10,683.76 for 38.85 hours of work billed at an hourly rate of $275. It seeks reimbursement of $45.98 for expenses. The Plaintiff objects to the Application on the ground that the fees are excessive and the description of services inadequate to assess their reasonableness. It adds that the time spent investigating adversary proceedings filed by FIA Card Services, N.A. in this Court since 2006, approximately 70 adversary proceedings over a five-year period, was "spurious and

---

[5] The Court also notes that the Debtor attached to her Statement of Undisputed Material Facts filed in conjunction with her Motion for Summary Judgment copies of a letter from the Plaintiff dated November 10, 2010 in which the Plaintiff requested discovery "[i]n lieu of [a] Rule 2004 examination and offering the Debtor two alternatives as an alternative to a § 523 action: "1) Stipulation in the sum of $8,900.00; or 2) One time cash settlement in the sum of $7,000.00." GC responded to the Plaintiff's letter on November 22, 2010, stating that the Debtor disputed the allegations and requesting copies of checks, evidence of any cash withdrawals, account statements and documents upon which the Plaintiff was relying in making its demand.

6

irrelevant."

The Plaintiff also argues that the Defendant failed to mitigate litigation expenses, citing Moriarty v. Svec, 233 F.3d 955 (7th Cir. 2000), *cert. denied,* 533 U.S. 930 (2001). In that case, which is not a bankruptcy case, the court stated:

> Substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply. *See* Sheppard v. Riverview Nursing Center, Inc., 88 F.3d 1332, 1337 (4th Cir.1996). Attorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party, and thus a reasonable attorney's fee may be less than the lodestar calculation. *See* Marek v. Chesny, 473 U.S. 1, 11, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). Determining whether an offer is substantial is left in the first instance to the discretion of the district court. Nevertheless, an offer is substantial if, as in this case, the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party. In such circumstances, a district court should reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer.

233 F.3d at 967. The Court notes that on July 12, 2011, the Plaintiff offered to dismiss its Amended Complaint upon receipt of $250. The Court finds that that was not a "substantial settlement offer" because at the time the Plaintiff proffered its offer, the Defendant had incurred fees of $2,241.25 and would have had to advance an additional $250, in addition to reimbursing GC for the expenses it had incurred.

GC also seeks to strike the Plaintiff's Objection because it was filed on January 5, 2012 after 4:30 p.m., citing MLBR Appendix 8, Rule 3(c) which provides:

(c) Filing Deadline

    A document may be filed at any time, except that:

    (1) where the Court orders that filing must be completed by a

7

> specific date and time, filing a document electronically does not alter the filing deadline for that document; and
>
> (2) where the Court orders that filing must be completed by a specific date but does not specify the time, entry of the document into the ECF System must be completed before 4:30 p.m. Eastern Standard (or Daylight, if applicable) Time in order to be deemed timely filed.

The Plaintiff admitted that it filed its Objection to the Application at 3:59 p.m. Pacific Standard Time, which is 6:59 p.m. Eastern Standard Time. It adds that there is no prejudice to the Debtor or bad faith on its part. The Court agrees.

## IV. DISCUSSION

A. Applicable Law

Section 523(d) of the Bankruptcy Code provides:

> [i]f a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d). "The purpose of § 523(d) is to discourage creditors from initiating meritless § 523(a)(2) actions in the hope of obtaining a settlement from an honest debtor anxious to save attorney's fees. Congressional Fed. Credit Union v. Pusateri (In re Pusateri), 432 B.R. 181, 197 (Bankr. W.D.N.C. 2010)(citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 80 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5865, 5963, 6320). See also People's Bank v. Poirier (In re Poirier), 214 B.R. 53 (Bankr. D. Conn. 1997). In Poirier, the court observed:

8

> In enacting Section 523(d) Congress recognized the usual wide disparity in litigation resources possessed by creditors and consumer debtors; a fact that might often be exploited by unscrupulous or reckless creditors. Such creditors may be tempted to bring or continue untenable dischargeability cases simply to "scare up" an installment-type settlement from a cash-poor debtor. Debtors are frequently unable to fund an adequate defense in such cases, and, therefore, may be inclined to agree to the nondischargeability of a debt in a reduced amount rather than fund the current costs of defending the litigation.

214 B.R. at 55-56 (citations omitted).  The court in Poirier added:

> Notably, by its terms Section 523(d) can require the payment of fees by a creditor irrespective of the creditor's actual intent in commencing and/or continuing a Section 523(a)(2) action. In other words, *a creditor can be liable for fees and costs under Section 523(d) even if it innocently prosecuted a substantially unjustified dischargeability complaint*. This is appropriate given the statute's deterrent purpose and the difficulty of proving intent by direct evidence.

Id. at 56 (emphasis supplied).

According to the court in Pusateri,

> If a creditor is to be taxed with the debtor's defense costs and attorney's fees in a § 523(a)(2) case, five elements must exist:
>
>> (1) The creditor filed a nondischargeability action under § 523(a)(2);
>> (2) The obligation must concern a consumer debt;
>> (3) The obligation must be found to be dischargeable;
>> (4) the complaint must not have been substantially justified; and
>> (5) the bankruptcy court must be satisfied that there are no special or unique circumstances, which would make the imposition of costs and attorneys' fees unjust.

Id. (citing First Deposit Nat'l Bank v. Stahl (In re Stahl), 222 B.R. 497, 504 (Bankr.W.D.N.C.1998)).

In Bridgewater Credit Union v. McCarthy (In re McCarthy), 243 B.R. 203, 208 (B.A.P.

9

1st Cir. 2000), the United States Bankruptcy Appellate Panel for the First Circuit made similar observations about the purposes surrounding the enactment of 11 U.S.C. § 523(d). It stated:

> Section 523(d )was enacted to discourage creditors from filing § 523(a)(2) complaints without first carefully reviewing the legal and factual bases for their fraud-based nondischargeability claims. Congress was concerned that, absent the meaningful possibility that a successful defending debtor would be awarded his or her fees and costs, unscrupulous or inconsiderate creditors might file iffy actions willy-nilly, betting that their financially strapped consumer debtors would settle to avoid defense costs. The "substantial justification" standard balances legislative solicitude for the honest debtor's plight against "the risk that imposing the expense of the debtor's attorney's fees and costs on the creditor may chill creditor efforts to have debts that were procured through fraud declared nondischargeable."

243 B.R. at 208 (citations omitted). It added while the contours of "substantial justification" are inexact and case specific, the burden is on the creditor to establish "(1) a reasonable basis in truth for the facts alleged, (2) a reasonable basis in law for the theory propounded, and (3) a reasonable support in the facts alleged for the legal theory advanced." Id. It observed that those elements were not inconsistent with a "totality of the circumstances approach and that "[i]t goes without saying that if § 523(d) is to fulfill its purpose, its "substantial justification" provision must set a standard somewhat higher than that set by Federal Rule of Bankruptcy Procedure 9011." Id. at 209.[6]

---

[6] In McDermott v. FIA Card Servs., N.A. (In re McDermott), No. 10-4085, 2010 WL 4638867 (Bankr. D. Mass. Nov. 8, 2010), the court observed:

> Congress intended that awards under § 523(d) be based upon the standard employed in awarding attorney's fees under the Equal Access to Justice Act ("EAJA"). See S.Rep. No. 65, 98th Cong., 1st Sess. 9–10 (1983) ("The Committee, after due consideration, has concluded that amendment

At the November 22, 2011 hearing, the Court determined that the Debtor satisfied her burden of proving the first three elements, and the Plaintiff failed to demonstrate that the action was "substantially justified" or that the "special circumstances" exception applied. The Court noted that the Plaintiff failed to conduct any discovery, and, in particular, it conducted no discovery between the filing of its original Complaint and the filing of the Amended Complaint.[7] With respect to the attorneys' fees now at issue:

---

to this provision to incorporate the standard for award of attorney's fees contained in the Equal Access to Justice Act strikes the appropriate balance between protecting the debtor from unreasonable challenges to dischargeability of debts and not deterring creditors from making challenges when it is reasonable to do so."). See also AT & T Universal Card Services. Corp. v. Williams ( In re Williams), 224 B.R. 523, 529 (2d Cir.B.A.P.1998). Indeed, both statutes use virtually identical language in mandating an award of attorney's fees to the prevailing party."

Id. at *4.

[7] In McCarthy, the panel noted:

Bankruptcy procedures provide creditors with "ample opportunity" to investigate the merits of § 523(a)(2) claims before commencing an adversary proceeding. AT & T Universal Card Servs. Corp. v. Grayson ( In re Grayson), 199 B.R. 397, 402 (Bankr. W.D. Mo.1996) (noting that creditors may make inquiries at the § 341 meeting of creditors and that they may conduct a pre-suit examination of the debtor pursuant to Federal Rule of Bankruptcy Procedure 2004). See also Mercantile Bank of Illinois v. Williamson (In re Williamson), 181 B.R. 403, 408 (Bankr. W.D. Mo.1995) (citing the creditor's failure to appear at the § 341 meeting and its failure to undertake a Rule 2004 meeting even after the grant of a 60 day extension in which to object to dischargeability as factors in the court's determination that the complaint was not "substantially justified"). Of course, it would go too far to say that a creditor must initiate such presuit investigations in every case or face a fees award if it does not prevail. There may be instances when, in view of all relevant circumstances, the creditor may demonstrate substantial justification notwithstanding its

11

> The congressional purpose behind § 523(d) demands that the debtor be made whole for defending an ill-conceived action, even if the plaintiff dismisses the suit. Otherwise, the debtor's counsel would go unpaid, and the next time a spurious action is filed against a debtor, the attorney would be unwilling to represent him. The debtor's reasonable costs pursuing its § 523(d) claim are compensable. 11 U.S.C. § 523(d)("the court shall grant judgment in favor of the debtor for the costs of, and reasonable attorney's fee for, the proceeding . . .").

In re Pusateri, at 205-06 (footnote omitted).

  B. Analysis

The Court, having found that the Plaintiff's Amended Complaint was substantially unjustified, concludes that the Debtor's attorney, GC, is entitled to fees in the sum of $9,583.75. The Court has an independent obligation to review the Application for reasonableness. Even were the Court to grant the GC's Motion to Strike the Plaintiff's Objection and ignore the observations made by the Plaintiff about the adequacy of the time entries and the amount of time spent, the Court finds that the time entries lack specificity in a number of instances and the number of hours expended in preparing the Motion for Summary Judgment (24 hours) appears to be somewhat excessive.

---

  failure to take such steps before filing a § 523(a)(2) complaint. See AT & T Universal Card Servs. Corp. v. Duplante ( In re Duplante), 215 B.R. 444, 450 n. 17 (9th Cir. BAP 1997) (a split panel reversing the bankruptcy court's § 523(d) award, finding the plaintiff's reliance on debtor's schedules and statement of financial affairs sufficient under the circumstances, rejecting a "per se rule requiring all plaintiffs to engage in pre-litigation discovery or attend creditors' meetings in order to defeat a request for attorney's fees under section 523(d)").

McCarthy, 243 B.R. at 209 n. 6.

While the Motion for Summary Judgment was exemplary, it did contain an erroneous allegation about the Plaintiff and its counsel that was the subject of a Motion to Submit Redacted Motion for Summary Judgment which the Court granted. Additionally, although the Plaintiff's Complaint was deficient and required amendment, and its Amended Complaint was predicated upon only inferences of fraud gleaned from the Debtor's Schedules and internal account records, the Court finds that had GC conveyed specific information about the Defendant's defenses to the Complaint to the Plaintiff prior to May 23, 2011, the litigation costs could, in fact, have been mitigated. Nevertheless, the Court agrees with the observation made by the court in Pusateri:

> It would be too much to suggest that every § 523(d) fee request be less than the original amount in controversy. Where the debt is small, (say $10,000 or less), this could make defense of the action untenable, and thereby thwart the purpose of § 523(d). Rather, the reasonableness determination must be made on a case-by-case basis.

432 B.R. at 208 (citations omitted).

## V. CONCLUSION

In accordance with the foregoing, the Court shall enter an order approving attorneys' fees in the sum of $9,583.75 and costs in the sum of $45.98.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: January 23, 2012